IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION<br>    Plaintiff,<br>        v.<br>FELLERMAN & CIARIMBOLI LAW, PC,<br>       and,<br>MICHAEL J. O'NEILL,<br>    Defendants. | Civil Action No.: _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Capitol Specialty Insurance Corporation ("CSIC"), through its undersigned counsel, files this Complaint seeking a judicial declaration that Defendants Fellerman & Ciarimboli Law, PC ("Fellerman" or the "**Insured**")[1] and Michael J. O'Neill (collectively, the "Defendants") are not entitled to coverage in pending litigation against the Defendants under a certain insurance policy issued to Fellerman and seeking reimbursement for fees and expenses incurred in providing Defendants with a defense against such litigation, and allege as follows:

**INTRODUCTION**

1. CSIC issued Lawyers Professional Liability Policy No. LW20191021-03 to Fellerman for the claims-made **Policy Period** of March 26, 2021 to March 26, 2022 (the "**Policy**"). A true and correct copy of the **Policy** is attached hereto as Exhibit A.

2. On or about November 19, 2021, Joseph L. Messa, Jr. & Associates, P.C., d/b/a Messa & Associates, P.C. ("Messa") initiated a civil action against Fellerman and Fellerman's individual partner, Michael J. O'Neill, for allegedly improperly soliciting Messa's clients, Fellerman's alleged failure to compensate Messa and breach of contract, styled *Joseph L. Messa,*

---

[1] Excluding headings, any terms in bold are defined in the attached **Policy**, which is incorporated herein by reference.

*Jr. & Associates, P.C., v. Michael J. O'Neill, et al.*, Case ID: 211101669 (Pa. Ct. Common Pleas, Philadelphia County) (the "*Messa* Lawsuit").  A true and correct copy of the complaint in the *Messa* Lawsuit is attached hereto as Exhibit B.

3. Fellerman sought coverage for the *Messa* Lawsuit under the **Policy** and, on February 16, 2022, CSIC agreed to provide Fellerman and O'Neill with a defense under an express reservation of rights, including the right to bring an action to establish that the **Policy** does not provide coverage for the *Messa* Lawsuit.  A true and correct copy of the February 16, 2022 coverage correspondence is attached hereto as Exhibit C.

4. Coverage under the **Policy** is available only for **Claims** resulting from **Wrongful Acts** committed in the rendering or failure to render **Legal Services**.  Ex. A, **Policy**, Section I.A.; Section VII.P.

5. The *Messa* Lawsuit does not allege a **Wrongful Act** committed in the rendering or failure to render **Legal Services**.

6. Further, coverage is available under the **Policy** only for **Claims** first made during the **Policy Period**.  Ex. A, **Policy**, Section I.A.

7. On information and belief, Messa had asserted a **Claim** against Defendants prior to the March 26, 2021 inception date of the **Policy**.  *See, e.g.*, Messa's Petition to Intervene.  A true and correct copy of the petition to intervene is attached hereto as Exhibit D.

8. Alternatively, the *Messa* Lawsuit seeks to recover amounts that are not covered **Damages** within the meaning of the **Policy**.

9. The **Policy** contains an express provision stating that the insurer shall have the right to be reimbursed in full for all defense costs and expenses incurred in the provision of a defense

to the **Insureds** in the event that it is later determined that the **Policy** does not provide coverage. Ex. A, **Policy** at Endorsement No. 3 "Advancement and Reimbursement of Defense Expenses."

10. CSIC thus brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, seeking a judicial determination that the **Policy** does not provide coverage to the Defendants for the *Messa* Lawsuit and that CSIC is entitled to reimbursement of all amounts paid in connection with the defense of the Defendants against that suit.

## PARTIES

11. Capitol Specialty Insurance Corporation is an insurance company organized under the laws of the state of Wisconsin and its principal place of business is in Connecticut.

12. Defendant Fellerman is a Pennsylvania professional corporation that, upon information and belief, has its principal place of business at 436 Spruce Street, Suite 100, Scranton, Pennsylvania.

13. Defendant O'Neill is a natural person who, upon information and belief, resides and/or works in Philadelphia County, Pennsylvania.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiff and all Defendants and there is an actual controversy between the parties that exceeds $75,000, exclusive of interest and costs.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Upon information and belief, Defendants reside in this District and a substantial part of the events giving rise to the claims at issue occurred in this District.

## STATEMENT OF FACTS

**I.     Nature of the Underlying Action**

16.     On or about November 19, 2021, Messa commenced a civil action against Fellerman and O'Neill, alleging that Defendants improperly solicited Messa's clients, improperly withheld money and breached a contract.  Ex. B., Compl.

17.     According to the Complaint, O'Neill worked for Messa as an attorney from approximately April 2019 until, in February 2020, O'Neill announced he was leaving to begin working at Fellerman.  Ex. B, Compl. at ¶¶ 10, 33.

18.     On or about March 11, 2019, Messa was retained to represent Kyriaki Bouziotas in a wrongful death action (the "Bouziotas Action").  Messa and Ms. Bouziotas allegedly signed a contingency agreement.  Ex. B, Compl. at ¶¶ 27-29.

19.     On or about May 9, 2019, Messa was retained to represent Kirbey Mena Meronne in a wrongful death action (the "Meronne Action").  Messa and Ms. Meronne allegedly signed a contingency agreement.  Ex. B, Compl. at ¶¶ 16-18.

20.     As alleged by Messa, O'Neill was not involved in Ms. Meronne's or Ms. Bouziotas' retention of Messa. Ex. B, Compl. at ¶¶ 20, 31.

21.     Messa alleges that upon announcing his departure from the firm, O'Neill represented that he would not solicit any of Messa's clients, and that neither he nor Fellerman had any interest in any case for which O'Neill had provided legal services while at Messa.  Ex. B, Compl. at ¶¶ 36-37.

22.     However, Messa alleges that O'Neill solicited its clients to move their representation to Fellerman both before and after representing that he would refrain from doing so. Ex. B, Compl. ¶¶ 44-45

23. In particular, Messa alleges that O'Neill convinced Ms. Bouziotas and Ms. Meronne to discharge Messa as their counsel and to retain Fellerman. Ex. B, Compl. at ¶¶ 44-45.

24. On or about June 5, 2020, after withdrawing as Ms. Meronne's counsel, Messa allegedly notified the Meronne Action's defendants of its financial interests in the outcome of the Meronne Action and demanded to be added as a payee for settlement purposes. Ex. B, Compl. at ¶ 52.

25. Similarly, on or about June 5, 2020 Messa allegedly notified the insurance carrier for the Meronne Action's defendants of its financial interests in the outcome of the Meronne Action and demanded to be added as a payee on any settlement payments. Ex. D, Petition to Intervene at ¶ 34.

26. Messa alleges that Fellerman refused to provide status updates on the Meronne Action, even in response to a specific request on December 19, 2020. Ex. B, Compl. at ¶¶ 53-56.

27. On or about February 1, 2021, Messa filed a petition to intervene in the Meronne Action. In its petition to intervene, Messa alleged that O'Neill and Fellerman had improperly solicited its clients, and Messa asserted a lien against the proceeds of any judgment or settlement. Ex. B, Compl. at ¶ 56; Ex. D, Petition to Intervene.

28. On or before February 16, 2021, Fellerman and O'Neill retained counsel to represent them in connection with Messa's allegations.

29. In response to Messa's petition to intervene, Fellerman and Messa negotiated a confidential agreement (the "Agreement") which addressed Messa's right to attorneys' fees and costs payable from any recovery in the Meronne and Bouziotas Actions. Pursuant to the Agreement, Fellerman allegedly agreed to notify Messa of any settlement or verdict within two calendar days. Ex. B, Compl. at ¶¶ 58-59.

30. On or about October 28, 2021, Fellerman provided Messa with notice that the Meronne Action had settled. Ex. B, Compl. at ¶ 60.

31. Fellerman provided Messa with the settlement amount. Messa alleges, however, that this amount failed to disclose additional monies being paid as part of the settlement. Ex. B, Compl. at ¶¶ 61-64.

32. On or about October 28, 2021, Fellerman filed an action captioned *Fellerman & Ciarimboli Law, P.C. v. Joseph L. Messa, Jr. & Associates, P.C. d/b/a Messa & Associates*, No. 21-4654, Lackawanna County Court of Common Pleas (the "*Fellerman* Lawsuit") seeking a judicial determination concerning Messa's rights in connection with the resolution of the Meronne Action. A true and correct copy of the complaint in the *Fellerman* Lawsuit is attached hereto as Exhibit E.

33. On or about November 19, 2021, Messa filed the *Messa* Lawsuit stating causes of action for 1) breach of fiduciary duty, 2) tortious interference with contractual relationships, 3) breach of contract, and 4) unjust enrichment/quantum meruit against the Defendants. Ex. B, Compl.

34. On or about November 22, 2021, Messa filed an answer to the complaint with new matter in the *Fellerman* Lawsuit, making virtually identical allegations as those set forth in the *Messa* Lawsuit. A true and correct copy of the answer to the complaint with new matter in the *Fellerman* Lawsuit is attached hereto as Exhibit F.

**II.     The Policy**

35. CSIC issued the **Policy** to the **Named Insured**, Fellerman & Ciarimboli Law, PC, for the March 26, 2021 to March 26, 2022 **Policy Period**. Ex. A, **Policy** Declarations Items 1 and 2.

36. Subject to the **Policy's** terms and conditions, the each **Claim** Limit of Liability is $2,000,000, and the aggregate Limit of Liability for all **Claims** is $4,000,000. Ex. A, **Policy**, Declarations Item 4.

37. **Claim Expenses** reduce the Limit of Liability. Ex. A, **Policy**, Section V.A.4.

38. **Claim Expenses** are defined in the **Policy** to mean:

    [T]he following expenses incurred in the investigation, adjustment, negotiation, arbitration, mediation, and defense of **Claims**:

    1. expenses **We** incur, other than salary, wages or expense of **Our** regular employees;

    2. reasonable and necessary fees charged by attorneys selected or pre-approved by **Us** to defend an **Insured**; and

    3. reasonable and necessary expenses incurred by an **Insured** at **Our** request.

    **Claim Expenses** do not include:

    1. loss of earnings or profit by an **Insured**; or

    2. salaries, wages, fees, or other compensation payable to an **Insured**.

Ex. A, **Policy**, Section VII.D.

39. The retention for each and every **Claim** that potentially implicates coverage is $15,000. Ex. A, **Policy**, Declarations Item 5.

40. Subject to its terms, conditions and exclusions, the **Policy** provides:

    **We** will pay on an **Insured's** behalf, those **Damages** and **Claim Expenses** in excess of the Retention and up to the applicable Limit of Liability specified in the Declarations that an **Insured** becomes legally obligated to pay because of a **Claim** which results from a **Wrongful Act** and which is first made against the **Insured** during the **Policy Period** or any applicable Extended Reporting Period and which is reported to **Us** in accordance with Part **VI.**A.1. of the **Policy.**

    It is a condition precedent to coverage under this **Policy** that any **Wrongful Act** upon which a **Claim** is based occurred:

    1. during the **Policy Period**; or

    2.      on or after the **Retroactive Date** and prior to the **Policy Period**, provided that all of the following three conditions are met:

        a.      the **Insured** did not notify any prior insurer of such **Wrongful Act** or related **Wrongful Act**;

        b.      prior to the inception date of the first policy issued by **Us** if continuously renewed, no **Insured** had any basis (1) to believe that any **Insured** had breached a professional duty; or (2) to foresee that any fact, circumstance, situation, transaction, event or **Wrongful Act** might reasonably be expected to be the basis of a **Claim** against any **Insured**; and

        c.      there is no other policy that provides insurance to the **Insured** for such **Wrongful Act** or **Claim**.

Ex. A, **Policy**, Section I.A.

    41.    The **Policy's** "WHO IS AN INSURED" section provides that the following are **Insureds** under the **Policy**:

    A.    The **Named insured** is the person(s) or entity(ies) designated in the Declarations . . .

            *    *    *

    C.    Any individual . . . who is or becomes a partner, officer, director, stockholder, shareholder, independent contract attorney or employee of a **Named Insured**, but only with respect to the performance of his or her duties as such on behalf of a **Named Insured**.

Ex. A, **Policy**, Section IV.A, C.

    42.    **Damages** is defined in the **Policy** to mean:

    1.    amounts which an **Insured** is legally obligated to pay as a result of a covered judgment, award or settlement;

    2.    costs assessed against an **Insured** in any suit or proceeding defended by **Us** unless such costs are assessed as a sanction for an **Insured's** delay or misconduct in the litigation process;

    3.    pre-judgment interest and post-judgment interest assessed before **We** have paid, offered to pay or deposited in court the part of the judgment that is covered by this **Policy** and that is within the applicable Limit of Liability;

**Damages** do not include:

      1.    taxes, criminal or civil fines or penalties imposed by law;

      2.    legal fees, costs and expenses paid to or incurred or charged by any **Insured** no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing;

      3.    any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

      4.    any amount based upon or in consequence of an **Insured's** conversion, misappropriation, embezzlement, commingling, defalcation or ethically improper use or disposal of funds or other property, whether held on behalf of clients or any third party; or

      5.    punitive, exemplary or the multiplied portion of multiple **Damages**.

Ex. A, **Policy**, Section VII.F.

    43.    **Claim** is defined in the **Policy**, in relevant part, to mean:

      1.    any written notice or written demand for monetary relief or **Legal Services**;

      \*    \*    \*

      2.    any civil proceeding in a court of law; [or]

      3.    any notice of any suit

which seeks **Damages** against an **Insured** for a **Wrongful Act**. . . .

Subject to Part **VI. CONDITION** A. 2 as applicable, a **Claim** will be deemed to have been first made when an **Insured** first received written notice of the **Claim**."

Ex. A, **Policy**, Section VII.C.

    44.    **Wrongful Act** is defined in the **Policy** to mean "any actual or alleged act, error, or omission committed by an **Insured** solely in the rendering or failure to render **Legal Services**."

Ex. A, **Policy**, Section VII.P.

    45.    **Legal Services** is defined in the **Policy**, in relevant part, to mean "services as a lawyer, mediator, or title agent" when "performed by an **Insured** for others." Ex. A, **Policy**, Section VII.H.

46. The **Policy** provides CSIC with a right to reimbursement for defense costs and expenses if "it is later determined that the claim or suit, or the defense costs and expenses . . . are not covered under this insurance policy." Ex. A, **Policy**, Endorsement No. 3 "Advancement and Reimbursement of Defense Expenses."

**III.    Coverage Position**

47. CSIC agreed to provide Fellerman and O'Neill with a defense in connection with the *Messa* Lawsuit subject to a full reservation of rights under the **Policy** by letter dated February 16, 2022. Ex. C, February 16, 2022 Letter.

48. In the February 16, 2022 correspondence, CSIC informed Fellerman and O'Neill that it would allow their selected counsel, Cozen O'Connor, to continue representing the Defendants at CSIC's normal rates for this venue or, if Cozen O'Connor does not consent to CSIC's normal rates, Defendants could fund the difference of the rates at their own expense. If neither of these options is acceptable, CSIC will exercise its right under the **Policy** to appoint counsel. Ex. C, February 16, 2022 Letter. Under either option, CSIC will have paid fees and expenses in connection with this defense by the time of the resolution of this matter.

## COUNT I

## DECLARATORY JUDGMENT

49. CSIC repeats and incorporates herein by reference paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. An actual case or controversy exists between the parties concerning whether the **Policy** provides coverage to the Defendants for the *Messa* Lawsuit.

51. The **Policy** only provides coverage for **Wrongful Acts**, which means any actual or alleged act, error or omission committed by an **Insured** solely in the rendering or failure to render **Legal Services**. Ex A, **Policy**, Section I.A.; Section VII.P.

52. **Legal Services** includes services as a lawyer performed by an **Insured** for others. Ex. A, **Policy**, Section VII.H.

53. The Defendants' conduct at issue in the *Messa* Lawsuit concerns the alleged improper solicitation of Messa's clients, the alleged failure to share fees owed to Messa, and breach of the Agreement, which is effectively a fee sharing agreement.

54. The *Messa* lawsuit, for which Defendants are seeking coverage, does not seek **Damages** for a **Wrongful Act**, nor could it because it does not arise out of **Legal Services** performed by Defendants for Messa (of which there were none) or others.

55. The *Messa* Lawsuit simply concerns a business dispute between two competing law firms and an individual lawyer and does not concern any alleged acts or errors in connection with the provision of any services for others requiring legal acumen in any way.

56. Because the *Messa* Lawsuit does not seek recovery for an alleged **Wrongful Act** under the **Policy**, CSIC is entitled to a declaratory judgment that it has no duty to defend the Defendants in connection with the *Messa* Lawsuit, that the Defendants are not entitled to coverage under the **Policy,** and that CSIC is entitled to reimbursement for fees and expenses incurred in providing Defendants with a defense against the *Messa* Lawsuit.

## COUNT II

## DECLARATORY JUDGMENT

57. CSIC repeats and incorporates herein by reference paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. An actual case or controversy exists between the parties concerning whether the **Policy** provides coverage for the claims made against the Defendants in the *Messa* Lawsuit.

59. The **Policy** only provides coverage for **Claims** first made during the **Policy Period** – from March 26, 2021 through March 26, 2022.  Ex A, **Policy**, Section I.A.

60. The **Policy** defines **Claim**, in relevant part, as "any written notice or written demand for monetary relief or **Legal Services**" or "any civil proceeding in a court of law" "which seeks **Damages** against an **Insured** for a **Wrongful Act**." Ex. A, **Policy**, Section VII.C.

61. If the *Messa* Lawsuit alleges a **Wrongful Act**, which CSIC disputes, then it was not a **Claim** first made during the **Policy Period**.

62. Specifically, on June 5, 2020, Messa informed all defendants in the underlying claim that it had a financial interest in the Meronne Action. Ex. B, Compl. at ¶ 52.

63. Also in June 2020, Messa informed defendants' insurer that it had a financial interest in the Meronne Action. Ex. D, Petition to Intervene at ¶ 34.

64. Messa's February 1, 2021 petition to intervene in the Meronne Action contained the same allegations as those in the *Messa* Lawsuit and requested that the court impose "a charging lien in favor of [Messa] against the proceeds of any judgment or settlement in these proceeds and against the respective interests of . . . Fellerman." Ex. D, Petition to Intervene; *see also* Ex. B, Compl.

65. The petition to intervene also stated:

> In an abundance of caution, [Messa] notes here that its petition and memorandum of law in support do not waive, release or otherwise prejudice any claim(s) that [Messa] and/or its principals, partners, or agents may have against Plaintiff, Mr. O'Neill and/or Fellerman …. All such claims are expressly preserved.

Ex. D, Petition to Intervene, fn 1.

66. Fellerman and O'Neill hired the law firm of Cozen O'Connor to represent them on or before February 16, 2021.

67. Each of these events pre-date the March 26, 2021 to March 26, 2022 **Policy Period**.

68. On information and belief there were other communications between Messa and Fellerman (or their counsel), prior to March 26, 2021 that constitute a **Claim** within the meaning of the **Policy**.

69. Accordingly, to the extent the *Messa* Lawsuit is a **Claim**, it is not covered under the **Policy** because it was first made prior to the **Policy Period**.

70. Because the *Messa* Lawsuit is not a **Claim** first made during the **Policy Period**, CSIC is entitled to a declaratory judgment that it has no duty to defend the Defendants in connection with the *Messa* Lawsuit, that the Defendants are not entitled to coverage under the **Policy,** and that it is entitled to reimbursement for fees and expenses incurred in providing Defendants with a defense against the *Messa* Lawsuit.

## COUNT III

## DECLARATORY JUDGMENT

71. CSIC repeats and incorporates herein by reference paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72. An actual case or controversy exists between the parties concerning whether the **Policy** provides coverage for the claims made against the Defendants in the *Messa* Lawsuit.

73. The **Policy** only provides coverage for **Claims** seeking covered **Damages** against an **Insured**.  Ex. A, **Policy**, Section I.A; Section VII.C.

74. The **Policy's** definition of **Damages** does not include amounts that may be owed in connection with fee sharing agreements.  Ex. A, **Policy**, Section VII.F.

75. Further, the **Policy's** definition of **Damages** expressly excludes punitive damages. Ex. A, **Policy**, Section VII.F.

76. Amounts that may be owed by Defendants by way of restitution or disgorgement of amounts improperly received or held are not covered under the **Policy**.

77. The *Messa* Lawsuit seeks to recover amounts owed to Messa for its share of fees in connection with the Meronne Action and the Bouziotas Action.

78. The *Messa* Lawsuit also seeks punitive damages.

79. The **Policy** does not provide coverage for amounts the Defendants may owe to Messa for its share of fees in connection with any action, including the Meronne Action and the Bouziotas Action, nor any punitive damages that may be awarded.

80. CSIC is entitled to a declaratory judgment that the **Policy** does not provide coverage for such uncovered amounts including the *Messa* Lawsuit's claims for recovery of fees owed in connection with the Meronne Action or the Bouziotas Action, nor any punitive damages award.

## REQUEST FOR RELIEF

**WHEREFORE**, CSIC respectfully requests that this Honorable Court:

(a) Issue a declaratory judgment that CSIC has no duty to defend Fellerman or O'Neill in the *Messa* Lawsuit because the *Messa* Lawsuit does not allege a **Wrongful Act**;

(b) Issue a declaratory judgment that CSIC has no duty to defend Fellerman or O'Neill in the *Messa* Lawsuit because the *Messa* Lawsuit is not a **Claim** first made during the **Policy Period**;

(c) Issue a declaratory judgment that the **Policy** does not provide coverage for the damages sought from Defendants in the *Messa* Lawsuit, including the contractual and other claims for fees in connection with the Meronne Action and the Bouziotas Action, and punitive damages.

(d) Issue a declaratory judgment that the **Policy** provides no coverage to Fellerman or O'Neill for the *Messa* Lawsuit;

(e) Award CSIC amounts paid in connection with its defense of Defendants against the *Messa* Lawsuit;

  (f)  Award CSIC its costs incurred herein; and

  (g)  Award such further relief as this Honorable Court deems just and appropriate.

February 16, 2022            Respectfully submitted,

                           */s/ Kristin H. Jones*

                           Kristin H. Jones (PA # 85725)
                           Charles A. (Tony) Jones
                           (*pro hac vice* to be filed)
                           TROUTMAN PEPPER HAMILTON SANDERS LLP
                           3000 Two Logan Square
                           Eighteenth and Arch Streets
                           Philadelphia, PA 19103
                           Telephone: 215.981.4897
                           Facismile: 215.981.4750
                           *kristin.jones@troutman.com*
                           *tony.jones@troutman.com*

                           *Attorneys for Plaintiff Capitol Specialty Insurance Corporation*